466 So.2d 1075 (1984)
Steven BUSCH, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-152.
District Court of Appeal of Florida, Third District.
December 13, 1984.
Rehearing Denied January 22, 1985.
*1076 Weiner, Robbins, Tunkey & Ross and Geoffrey C. Fleck, Miami, for appellant.
Jim Smith, Atty. Gen., and G. Bart Billbrough, Asst. Atty. Gen., for appellee.
Before HENDRY, HUBBART and DANIEL S. PEARSON, JJ.
PER CURIAM.
Steven Busch appeals his conviction of aggravated battery with a firearm and *1077 shooting into an occupied building in violation of section 784.045, Florida Statutes (1981), and section 790.19, Florida Statutes (1981).
The charges initially filed against Busch in a two count information, attempted first degree murder with a firearm and shooting into an occupied building, arose out of an incident occurring on the evening of December 3, 1982 in which a shotgun was discharged from a truck idling in the road. The pellets from the gun struck a residence, went through an open window and wounded a visitor to that residence. The perpetrator quickly fled the scene. Neighbors heard a truck idling prior to the shotgun blast and then heard the vehicle speed away. The police learned of Busch through an anonymous tip and arrested him. Busch admitted to the shooting, indicating that the shotgun had accidentally discharged while he was moving the gun. Subsequent to the filing of charges against Busch, a preliminary hearing was held, on December 23, 1982, at which Busch's companion on the evening in question, a Ms. Schoolcraft who was an old acquaintance of Busch's father, testified that she was drinking with Busch that evening and he asked her to go riding in his truck. As they were driving, Busch had removed the shotgun from the seat behind them and rested it on her lap, the barrel pointing out the window, when the gun accidentally discharged. Prior to trial a sworn motion to dismiss was filed by Busch. The trial court denied the motion, however, as Schoolcraft had recanted her preliminary hearing testimony. Schoolcraft became the chief prosecuting witness at trial and testified that the shooting was an intended act.
Other evidence at trial revealed that Busch had previously lived with his sister, next door to the residence in question, and had owned several pit bulldogs which he kept on her property. The neighbors next door (the Webbs) had complained to another neighbor about the odor emanating from Busch's sister's property because of the dogs. Busch knew of the complaint and that it was made by his sister's next door neighbor. Thereafter, Busch removed his dogs from his sister's property and he moved to another residence with his father. Further evidence at trial indicated that the trajectory of the pellets was such that the gun had discharged parallel to the truck window, or "downward" and that the pellets hit the chain link fence surrounding the Webbs' house and ricocheted into their residence. It was also adduced that at least eleven pounds of pressure was needed to discharge pellets from the weapon in a half-cocked safety position.
At the conclusion of all the evidence the trial court reduced the count of attempted first degree murder to aggravated battery with a firearm. The jury returned a verdict finding Busch guilty of aggravated battery with a firearm and shooting into an occupied building. Busch moved for a new trial which was subsequently denied. He was then sentenced to a ten year prison term on the aggravated battery with a firearm count, a consecutive five year period of probation on the count for shooting into an occupied building and ordered to make restitution in the amount of approximately $1,000. Subsequently, Busch filed an amended motion for new trial or alternatively, a petition for writ of error coram nobis, attaching thereto a sworn statement by Schoolcraft recanting her trial testimony. The trial court summarily denied this motion.
Appellant first contends that the trial court erred in denying, without a hearing, the amended motion for new trial or alternatively, the petition for writ of error coram nobis, based upon the ground that the chief prosecution witness had recanted her inculpatory trial testimony subsequent to Busch's conviction. It is apparent from the record that the motion for new trial was untimely filed and accordingly, was properly denied by the trial court. Rule 3.590(a), Florida Rules of Criminal Procedure. It is further apparent that defense counsel's request that the motion for new trial be treated as a petition for writ of error coram nobis based on the ground of newly discovered evidence was denied by *1078 the trial court upon the mistaken belief that such an application should have been made to this court. We affirm the ruling, however, for other reasons. See Postell v. State, 383 So.2d 1159 (Fla. 3d DCA 1980). We note that where no appeal has been sought a petition for writ of error coram nobis is made to the same court in which the judgment was entered. State v. Woods, 400 So.2d 456 (Fla. 1981); State v. Stettin, 364 So.2d 95 (Fla. 3d DCA 1978).
The alleged newly discovered evidence which Busch urged below as a basis for post-conviction relief included the recantation made by Schoolcraft after trial in the form of a sworn statement. In considering whether the trial court erred in denying Busch's petition for writ of error coram nobis we must determine the legal effect of the alleged facts upon the previously entered judgment. Smith v. State, 400 So.2d 956, 960 (Fla. 1981). In Hallman v. State, 371 So.2d 482 (Fla. 1979), the Florida Supreme Court set out specific requisites of a petition for writ of error coram nobis addressed to the appellate court. The alleged facts relied upon must be fully disclosed, since the appellate court must be afforded full opportunity to determine whether prima facie grounds are established. Furthermore, the evidence upon which the alleged facts can be proved and the source of the evidence must be asserted. The facts alleged must not have been known by the court, the party, or by counsel at the time of trial, and it must be clear that defendant or his counsel could not have discovered them through the use of due diligence. Smith v. State, supra; Hallman v. State, supra. In determining the sufficiency of the application, a strict test of "conclusiveness" predicated on the need for judicial finality must be applied. Smith v. State, 400 So.2d at 960. To warrant the granting of such relief, the petition must allege facts of such a vital nature that, had they been known to the trial court, they conclusively would have prevented entry of the judgment. Hallman v. State, 371 So.2d at 485.
The facts alleged in the instant petition are that after Schoolcraft testified at the preliminary hearing she moved to Jacksonville and her whereabouts were unknown. The defense indicated to the state that they would rely on her testimony as substantive evidence at trial. The state then located Schoolcraft and elicited from her a deposition statement recanting her earlier testimony. She indicated in her deposition that she had been forced to testify that the gun accidentally discharged and that she had committed perjury at the preliminary hearing. Based upon the recantation of Schoolcraft, the state traversed the defense's sworn motion to dismiss. On December 1, 1983, subsequent to the trial, Schoolcraft under oath recanted her trial testimony and prior deposition, indicating that the state had threatened to tell her relatives about her criminal past, and threatened to charge her with perjury and as an accessory to the crime if she did not testify as told. The recantation reinforced Schoolcraft's initial testimony which was given without coercion and while the incident was fresh in her mind. The petition additionally alleged that the state withheld material evidence in that the police department, an arm of the state, should have known that the material witness had been threatened with jail for perjury.
The facts now offered as newly discovered evidence in an attempt to gain a new trial are cumulative to the evidence introduced at trial. Therefore we conclude that the petition should be denied on the basis that the evidence submitted by petitioner is not new evidence. Dobbert v. State, 414 So.2d 518 (Fla. 1982); Smith v. State, supra. We cannot say that the facts alleged in Busch's petition as a basis for relief were unknown at the time of trial. Busch's claim that this different version of the incident now disclosed by Schoolcraft in her December, 1983 sworn statement was unknown at the time of trial is refuted by the testimony given by her at the preliminary hearing. That Busch, through his counsel, had knowledge of this earlier statement is evidenced by the fact that his counsel deposed Schoolcraft and cross-examined her during the trial. In *1079 view of the fact that prior to and at the time of trial Busch, through his counsel, was fully aware of Schoolcraft's different testimony now offered as newly discovered evidence, we find appellant has failed to demonstrate facts sufficient to warrant the granting of the requested relief. Dobbert v. State, 414 So.2d at 520; Tafero v. State, 406 So.2d 89 (Fla. 3d DCA 1981).
Appellant next contends that the trial court erred in permitting the state to introduce hearsay testimony to establish the motivation for Schoolcraft's prior inconsistent statement (that she was afraid of Busch), thereby attacking Busch's character. The test to be applied by this court in determining whether prejudicial error has been committed is whether, but for the error complained of, a different result would have been reached at the trial. Wallace v. Rashkow, 270 So.2d 743 (Fla. 3d DCA 1972). We think not. Here, defense counsel made the same statement complained of to the jury on opening argument. This was a conscious tactical decision on his part. While the testimony introduced was allegedly hearsay, the defense cannot now complain that the statement elicited was prejudicial to his case where he himself introduced such testimony. While it may have been error to permit the allegedly hearsay testimony, we feel that any such error was harmless and no miscarriage of justice resulted from its inclusion. Pitts v. State, 88 Fla. 438, 102 So. 554 (1924); § 59.041, Fla. Stat. (1981).
Finally, Busch contends that reversible error occurred when the trial court denied his motion for judgment of acquittal based upon insufficiency of the evidence where the evidence presented was consistent with the defendant's claim that the shooting was accidental. Although the state must prove intent just as any other element of a crime, a defendant's mental intent is hardly ever subject to direct proof. Instead, the state must establish the defendant's intent based on the surrounding circumstances of the case. Brewer v. State, 413 So.2d 1217, 1219 (Fla. 5th DCA 1982), pet. for rev. denied, 426 So.2d 25 (Fla. 1983). When a defendant moves for a judgment of acquittal, he admits all facts in evidence adduced and every conclusion favorable to the state reasonably inferable therefrom. Garmise v. State, 311 So.2d 747 (Fla. 3d DCA 1975), cert. denied, 429 U.S. 998, 97 S.Ct. 524, 50 L.Ed.2d 608 (1976). The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal. Lynch v. State, 293 So.2d 44, 45 (Fla. 1974). A motion for judgment of acquittal should not be granted unless it is apparent that no legally sufficient evidence has been submitted under which a jury could legally find a verdict of guilty. Id. at 45. Sub judice, the totality of the circumstances surrounding the shooting provided evidence legally sufficient to warrant submission of the case to the jury. The jury's verdict is supported by competent, substantial evidence and accordingly, will not be disturbed by this court on appeal.
Affirmed.